**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Laura Martinez, | No. CV-13-00589-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Cenlar FSB, | |
| Defendant. | |

Pending before the Court are two Motions.  On March 3, 2014, Defendant filed a Motion for Judgment on the Pleadings.  (Doc. 35).  Then, on March 14, 2014, Plaintiff filed a Motion for Leave to Amend Complaint.  (Doc. 39).

The Court reviewed the parties' pleadings and heard oral argument on August 25, 2014.  The Court will grant the Motion for Judgment on the Pleadings in part and deny it in part and will grant the Motion for Leave to Amend the Complaint.

I.     **Background**[1]

       **A.     Facts**

Plaintiff purchased a house in Tucson, Arizona on March 7, 2008.  (Doc. 11 at ¶7).  In the spring of 2010, Plaintiff lost her job and began experiencing financial difficulties.  (*Id*. at ¶8).  On August 9, 2010, Plaintiff received a Notice of Trustee Sale.  *Id*. at ¶9.  After negotiating with her lender, MeriWest Credit Union, the Trustee Sale was cancelled and her mortgage payments were temporarily reduced.  *Id*.  However, one year later in

---

[1] Unless otherwise noted, the facts come from the Plaintiff's Complaint.

August 2011, the temporary modification of her mortgage payments expired and her payment was increased. *Id.* at ¶10.

Plaintiff made the first two mortgage payments after the expiration of the temporary loan modification; however, she was unable to continue making payments. *Id.* at ¶11. On August 26, 2011, Defendant, Plaintiff's loan servicer, signed a contract with the Arizona Department of Housing, which is responsible for running the Arizona Hardest Hit Fund ("HHF") program. *Id.* at ¶14. The contract provides that "[u]pon notification that a borrower has been conditionally approved for HHF, the Servicer shall not initiate the foreclosure process or, if the borrower is already in the foreclosure process, [shall delay] a foreclosure sale for 45 days, with any extensions by mutual consent of the Eligible Entity and the Servicer." *Id.* at ¶15.

In April 2012, Plaintiff received a foreclosure notice. *Id.* at ¶12. In response, Plaintiff applied for the HHF program for assistance with her mortgage. *Id.* She was approved for Underemployment Assistance through the HHF, which provides a maximum monthly assistance of $2,000 for a term of 24 months. *Id.* at ¶13. On June 26, 2012, Defendant received an "I" record from the Arizona Department of Housing indicating their intent to provide payment assistance to Plaintiff through the HHF program. *Id.* at ¶¶16, 19.

On July 3, 2012, Plaintiff's house was sold at an auction without Plaintiff's knowledge. *Id.* at ¶21. On July 6, 2012, Defendant sent an objection to the Arizona Department of Housing regarding Plaintiff's HHF assistance because the house had been foreclosed on July 3, 2012. *Id.* at ¶22. The sale of Plaintiff's house was irreversible, and Plaintiff was forced to vacate her home in July 2012. *Id.* at ¶¶23, 26.

### B.    Procedural History

On July 3, 2013, Plaintiff filed a Complaint. (Doc. 1). On July 25, 2013, Defendant filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 7). On August 14, 2013, Plaintiff filed a First Amended Complaint, (Doc. 11), which superseded her original Complaint. *See F.D.I.C. v. Jackson*, 133 F.3d 694,

1    702 (9th Cir. 1998).   After the filing of Plaintiff's First Amended Complaint, the Court

2    denied Defendant's Motion to Dismiss as moot.  (Doc. 18).  Defendant filed an Answer

3    to Plaintiff's First Amended Complaint on September 3, 2013.  (Doc. 16).

4         In her First Amended Complaint, Plaintiff alleges four claims for relief: breach of

5    contract, wrongful foreclosure, breach of the covenant of good faith and fair dealing, and

6    negligent performance of an undertaking.  On March 3, 2014, Defendant filed a Motion

7    for Judgment on the Pleadings.  (Doc. 35).  Then, on March 14, 2014, Plaintiff filed a

8    Motion for Leave to Amend Complaint.  (Doc. 39).  Defendant filed a Response to

9    Plaintiff's Motion on March 28, 2014.  (Doc. 40).  Plaintiff filed a Response to

10   Defendant's Motion on April 1, 2014. (Doc. 41).  Defendant filed a Reply in support of

11   its Motion for Judgment on the Pleadings on April 8, 2014.  (Doc. 44).  Plaintiff filed a

12   Reply in support of her Motion for Leave to Amend Complaint on April 9, 2014.  (Doc.

13   46).

14   **II.    Motion for Judgment on the Pleadings**

15        **A.    Governing Standard**

16        Fed.R.Civ.P. 12(c) provides that, "[a]fter the pleadings are closed—but early

17   enough not to delay trial—a party may move for judgment on the pleadings." Dismissal

18   through a motion for judgment on the pleadings is appropriate "'only if it is clear that no

19   relief could be granted under any set of facts that could be proven consistent with the

20   allegations.'" *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 810 (9th Cir.1988)

21   (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59

22   (1984)). Judgment on the pleadings is appropriate when the moving party establishes that

23   there are no material issues of fact to resolve and it is entitled to judgment as a matter of

24   law.  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th

25   Cir.1989). "All allegations of fact of the opposing party are accepted as true." *Austad v.*

26   *United States,* 386 F.2d 147, 149 (1967). Furthermore, all inferences reasonably drawn

27   from the alleged facts must be construed in favor of the responding party. *General*

28   *Conference Corp. of Seventh–Day Adventists v. Seventh Day Adventist Congregational*

1   *Church,* 887 F.2d 228, 230 (9th Cir.1989).  However, conclusory allegations are
2   insufficient to defeat a motion for judgment on the pleadings.  *McGlinchy,* 845 F.2d at
3   810.

4   The Court may consider any matter set forth in the complaint which is subject to
5   judicial notice. *Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 896, 899 (9th
6   Cir.2007). The Court may take judicial notice of "matters of public record" outside the
7   pleadings without converting a motion for judgment on the pleadings into a motion for
8   summary judgment. Fed.R.Evid. 201; *see also Lexicon Inc. v. Milberg Weiss Bershad*
9   *Hynes & Lerach,* 102 F.3d 1524, 1537 (9th Cir.1996), *rev'd on other grounds,* 523 U.S.
10  26 (1998) (holding that a district court may consider matters of public record, including
11  court records that have a direct relation to the matters at issue, without converting a
12  motion to dismiss into a motion for summary judgment); *Mann v. GTCR Golder Rauner,*
13  *L.L.C.,* 351 B.R. 714 (D.Ariz.2006) (same). The Court also may consider a document that
14  is attached and referred to in the complaint without converting the motion into a motion
15  for summary judgment if its authenticity is not questioned. *Branch v. Tunnell,* 14 F.3d
16  449, 453-454 (9th Cir.1994), *overruled on other grounds, Galbraith v. County of Santa*
17  *Clara,* 307 F.3d 1119 (9th Cir. 2002).

18  **B.   Discussion**

19  **1.   Breach of Contract**

20  Defendant entered into a Servicer Participation Agreement (Agreement) with the
21  Arizona Department of Housing on August 26, 2011, in which Defendant agreed to
22  participate in the HHF program.  (Doc. 11 at ¶31).  The purpose of the HHF program is to
23  assist unemployed homeowners to keep their homes by providing monetary assistance.
24  (*Id*. at ¶¶32, 33.)   According to Plaintiff, Defendant breached the Agreement when it
25  failed to delay the foreclosure proceedings in accordance with the terms of the
26  Agreement despite receiving prior notice that Plaintiff had been approved for assistance
27  through the HHF program.  *Id*. at ¶51.

28  Defendant argues that Plaintiff does not have standing to bring a breach-of-

contract claim against Defendant for allegedly breaching its Agreement with the Arizona Department of Housing. Defendant explains that the HHF program was created under the Making Home Affordable Act, which was an Act created under the Emergency Economic Stabilization Act (EESA). *See* 12 U.S.C. §§5201-5261. Since the HHF is a program created under the EESA, there is no private right of action upon which Plaintiff can base her breach of contract claim and it should be dismissed. *See Miller v. Chase Home Finance, LLC*, 677 F.3d 1113, 1116-1117 (11th Cir. 2012).

Plaintiff admits that there is no express private right of action embodied in the Economic Emergency Stabilization Act or the Home Affordable Modification Program (HAMP). (Doc. 41 at 6.) *See Marks v. Bank of America, N.A.*, 2010 WL 2572988, *5-6 (D. Ariz. 2010) (the district court held that the mortgagor had no private right of action under HAMP).

However, Plaintiff argues that because she was approved for assistance through the HHF program and Defendant was so notified, and specific identifying information was provided to Defendant about Plaintiff, she was an intended third-party beneficiary to the Agreement between Defendant and the Arizona Department of Housing, which provided that upon receipt of notification of conditional approval, Defendant would not commence foreclosure proceedings for 45 days or if already in the foreclosure process would not conduct a sale for 45 days. Specifically, the Agreement provides:

> Upon notification that a borrower has been conditionally approved for HHF, the Servicer shall not initiate the foreclosure process or, if the borrower is already in the foreclosure process, conduct a foreclosure sale for 45 days, with any extensions by mutual consent of the Eligible Entity and the Servicer. (Doc. 11-1 at ¶3)

Plaintiff is not a party to the Agreement between Defendant and the Arizona Department of Housing. Therefore, to have standing to sue for breach of this Agreement, Plaintiff must be an intended third-party beneficiary to the contract as opposed to an incidental beneficiary. *GECCMC 2005-C1 Plummer Street Office Ltd. Partnership v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012); *Klamath Water*

1    *Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 2000).  The Ninth Circuit

2    defines third party beneficiaries as:

3              (1) Unless otherwise agreed between promisor and promisee,
              a beneficiary of a promise is an intended beneficiary if

4              recognition of a right to performance in the beneficiary is
              appropriate to effectuate the intention of the parties and ... (b)

5              the circumstances indicate that the promisee intends to give
              the beneficiary the benefit of the promised performance.

6
              (2) An incidental beneficiary is a beneficiary who is not an

7              intended beneficiary.

8
*Klamath*, 204 F.3d at 1211(citing the Restatement (Second) of Contracts § 302 (1979)).

9
     "To sue as a third-party beneficiary of a contract, the third party must show that the

10
     contract reflects the express or implied intention of the parties to the contract to benefit

11
     the third party." *Klamath*, 204 F.3d at 1211. The mere fact that a third party may benefit

12
     under the contract does not confer a right to sue, "instead, the parties must have intended

13
     to benefit the third party."  *Id*.  "[T]to prove intended beneficiary status, 'the third party

14
     must show that the contract reflects the express or implied intention of the parties to the

15
     contract to benefit the third party.'"  *GECCMC 2005-C1 Plummer Street Office Ltd.*

16
     *Partnership*, 671 F.3d at 1033 (*quoting Klamath Water Users Prof. Assoc.*, 204 F.3d at

17
     1211.)

18
             While the contract does not have to specifically name the third party and can

19
     specify a class of parties to benefit from the contract, "'parties that benefit from a

20
     government contract are generally assumed to be incidental beneficiaries,' rather than

21
     intended beneficiaries, and so 'may not enforce the contract absent a clear intent to the

22
     contrary.'"  *GECCMC 2005-C1 Plummer Street Office Ltd. Partnership*, 671 F.3d at

23
     1033 (quoting *Cnty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir.

24
     2009), *rev'd on other grounds by Astra USA, Inc. v. Santa Clara Cnty.*, 131 S.Ct. 1342,

25
     (2011)).

26
              This clear intent hurdle is a high one. It is not satisfied by a

27              contract's recitation of interested constituencies, vague,
              hortatory pronouncements, statements of purpose, explicit

28              reference to a third party, or even a showing that the contract
              operates to the third parties' benefit and was entered into with

> them in mind, Rather, we examine the precise language of the contract for a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries.

*GECCMC 2005-C1 Plummer Street Office Ltd. Partnership,* 671 F.3d 1027, 1033-1034 (9th Cir. 2012) (internal quotations and citations omitted).  "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." *Klamath,* 204 F.3d at 1211 (citing Restatement (Second) of Contracts § 302(1)(b) cmt. d).  In *Marks,* the district court found that the plaintiff mortgagor was not an intended beneficiary because the language of the contract did not show that the parties to the contract intended to grant qualified borrowers the right to enforce and that the lender was not required to grant or deny the loan, only to consider it, so the plaintiff mortgagor could not have reasonably believed that the defendant lender was obligated to modify her loan.  2010 WL 2572988, at *4.

In the present case, Plaintiff argues that because Defendant had a duty under the Agreement to postpone any foreclosure proceeding upon notification that a borrower had been approved for HHF funding and because the "I" record sent to Defendant by the Arizona Department of Housing specifically identified Plaintiff as the person who would receive payment assistance, the parties manifested a clear intent to confer on Plaintiff status as a third-party beneficiary of the Agreements.  Further, Plaintiff argues that she reasonably relied on Defendant's promise in the Agreement to postpone the trustee sale of her home upon preliminary approval for HHF funding.  Defendant asserted at oral argument that there was no proof it had ever received the "I" record.[2]

The majority of the cases found by this Court that address third-party beneficiary claims related to contracts or agreements concerning programs created under the EESA or HAMP deal with a borrower attempting to enforce compliance with the terms of HAMP Service Provider Agreements.  *See Edwards v. Aurora Loan Services, LLC,* 791

---

[2] As the Court noted at oral argument, this motion is one for judgment on the pleadings and such an argument is better left to a motion for summary judgment.

F.Supp.2d 144, 152 (D. DC. 2011) (listing cases in which district courts have addressed the question of whether eligible borrowers have standing to enforce the terms of HAMP Service Provider Agreements as third party beneficiaries and decided against the borrowers); *Marks v. Bank of America, N.A*., 2010 WL 2572988 (D. Ariz. 2010). The central theme in the reasoning of these opinions is that the HAMP contracts do not contain any provisions demonstrating the parties' intent to make eligible borrowers third-party beneficiaries with enforceable rights and the HAMP contracts provided the lenders with significant discretion on whether to modify borrower's loans. This case is distinguishable, and Defendant has not presented any cases that address the specific situation applicable in this case.

This is a close question. On the one hand, the language of the contract contains nothing specifically identifying borrowers as intended beneficiaries. But it also contains no language limiting the benefits of the Agreement to the parties to the Agreement. *Compare Escobedo v. Country Wide Home Loans, Inc*., 2009 WL 4981618, at *2 (S.D.Cal. Dec. 15, 2009) (the Agreement specified that it "shall inure to the benefit of . . . the parties to the Agreement and their permitted successors-in-interest."). The Agreement here does, however, contain the clause requiring the lender to defer or delay any foreclosure proceedings upon receipt of a notification that a borrower has been conditionally approved for HHF. The Court finds that this clearly expresses an intent to benefit those borrowers for whom the lender receives notification of conditional approval for HHF. (*See* Doc. 11-1, ¶3). Unlike the other HAMP cases in which the lender was under no obligation to modify the borrower's loan, in this case, there was an express clause requiring the Defendant to delay the foreclosure sale at least 45 days. The Agreement provides no discretion to the Defendant regarding delay of foreclosure action 45 days after receiving notice that a borrower had been conditionally approved for HHF funding. Plaintiff—a borrower who received conditional approval for HHF and on whose behalf a notice was sent to Defendant prior to the foreclosure sale—is within the class of persons that is an intended beneficiary of the Agreement.

1      Based on the facts of this case and the particular Agreement at issue, the Court

2  finds that Plaintiff has stated a plausible claim for breach of contract for failing to delay

3  the foreclosure process 45 days after receiving notice that Plaintiff had been approved for

4  HHF funding.

5      Further, the Court does not believe that a finding that Plaintiff has standing in this

6  case would open the door to potentially millions of homeowners filing claims and notes

7  that at oral argument, Defendant did not claim to have information of such an opening of

8  the "floodgates."   The Court's holding is limited to the specific language used in this

9  Agreement and to those borrowers on whose behalf a lender received notice of

10  conditional approval for HHF funding but after receiving such notice, the lender failed to

11  delay a foreclosure sale for at least 45 days as required by the relevant contract.

12                    **2.      Wrongful Foreclosure**

13      Defendant argues that Plaintiff's wrongful foreclosure claim should be dismissed

14  because it is based on Plaintiff's breach-of-contract claim.   However, this Court has

15  determined that Plaintiff has stated a valid breach of contract claim, so the argument is

16  precluded.

17      Alternatively, Defendant argues that Plaintiff has failed to sufficiently plead a

18  claim for wrongful foreclosure.   Arizona state courts do not recognize the tort of

19  wrongful foreclosure.   *Adrian v. Federal Nat. Mortg. Ass'n*, 557 Fed. Appx. 652, 653-

20  654 (9th Cir. 2014).   However, district courts in Arizona have followed the reasoning of

21  other jurisdictions that do recognize the tort of wrongful foreclosure.   *See Cervantes v.*

22  *Countrywide Home Loans, Inc*., 656 F.3d 1034, 1043 (9th Cir. 2011).   A wrongful

23  foreclosure claim is available only after a foreclosure had occurred and where the

24  plaintiff is not in default at the time of the foreclosure.   *Cervantes v. Countrywide Home*

25  *Loans, Inc*., 656 F.3d 1034, 1043 (9th Cir. 2011); *Holt v. Countrywide Home Loans, Inc.*,

26  2012 WL 369591, *4 (D. Ariz. 2012) ("[t]o establish a claim for wrongful foreclosure

27  Plaintiffs must prove that either they were not in default at the time of the foreclosure or

28  that the foreclosing party caused their default.").

1    Plaintiff argues that although she was in default on the loan, the default was cured
2    when she was approved for HHF funding.  (Doc. 41 at 10.)  Specifically, Plaintiff
3    contends that once the "I" record was sent to Defendant, any default on the loan was
4    cured and Defendant was no longer authorized to proceed with the foreclosure.  (*Id.* at
5    10-11.)  Plaintiff relies on the reasoning of *Herring v. Countrywide Home Loans, Inc.*,
6    2007 WL 2051394, *5-6 (D. Ariz. 2007).  In *Herring*, the district court found that
7    because the plaintiff had cured any default on the home loan when she entered into a
8    Repayment Plan Agreement with the defendant and paid the initial payment, a
9    subsequent foreclosure of plaintiff's home was wrongful.  *Id*. at *1, 6.  The Court finds
10   that the reasoning in *Herring* is distinguishable from this case.

11   According to Plaintiff's First Amended Complaint, Defendant received the "I"
12   record on June 26, 2012.  However, according to Plaintiff, this notification only provided
13   notice that Plaintiff was conditionally approved for HHF funding and is meant to initiate
14   the approval process.  (Doc. 11-2).  Once the "I" record was received, Defendant was not
15   necessarily obligated to accept the funding and could file an "O" record objecting to the
16   application.  As such, until the Defendant validated that the approval had been processed
17   by issuing a "V" record, the default had not been cured.  In fact, according to the
18   Complaint, on July 6, 2012, three days after the foreclosure sale, Defendant sent an "O"
19   record to the HHF regarding Plaintiff's application.

20   Additionally, Plaintiff's First Amended Complaint does not even allege that the
21   "I" record cured any breach.  In fact, it specifically provides that Plaintiff "was in a
22   position to tender the required funds to cure any breach."  (Doc. 11 at ¶20).

23   Accordingly, Plaintiff's claim for wrongful foreclosure is dismissed without
24   prejudice.

25              **3.      Covenant of Good Faith and Fair Dealing**
26   Defendant argues that Plaintiff's bad faith claim should be dismissed since it is
27   based on Plaintiff's breach-of-contract claim.  Again, because this Court has determined
28   that Plaintiff has stated a valid breach-of-contract claim, the Court rejects this argument.

1    The implied covenant of good faith and fair dealing protects the right of the parties

2    to a contract to receive the benefits of the contract they entered into.  *Wagenseller v.*

3    *Scottsdale Memorial Hosp*., 147 Ariz. 370, 385 (1985).  This implied covenant prevents

4    either party from acting "to impair the right of the other [to] receive the benefits which

5    flow from their agreement."  *Rawlings v. Apodaca*, 151 Ariz. 149, 153 153, 726 P.2d 565

6    569.  As an intended third-party beneficiary of the Agreement, Plaintiff may be permitted

7    to rely on the Agreement to pursue a claim for a breach of the covenant of good faith and

8    fair dealing based in contract.[3]  S*ee e.g. Schwartz v. Chase Home Finance, LLC*, 2011

9    WL 1933738, *2 (D. Ariz. 2011).

10    "While the remedy for breach of this implied covenant is ordinarily by action on

11    contract, in certain circumstances 'the breach . . . may provide the basis for imposing tort

12    damages.'" *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 171 Ariz. 207, 213,

13    829 P.2d 1253, 1259 (Ariz. Ct. App. 1992) (*quoting Burkons v. Ticor Title Ins. Co. of*

14    *Cal.,* 168 Ariz. 345, 355, 813 P.2d 710, 720 (1991)).  However, in order to support a

15    tortious breach of this covenant, a special relationship characterized either by a fiduciary

16    relationship, elements of public interest, or adhesion must exist.  *McAlister*, 171 Ariz. at

17    213, 829 P.2d at 1259.

18    As noted, in her opposition to the Motion, Plaintiff argues a tortious breach of the

19    covenant of good faith and fair dealing when Defendant proceeded with the foreclosure

20    sale after receiving the "I" record.  She contends that lenders and loan servicers have a

21    non-contractual duty towards borrowers that can give rise to negligence claims.  (Doc. 41

22    at 12, citing *McIntosh v. IndyMac Bank, FSB*, 2012 WL 176316 at *3-4 (D. Ariz. 2012)).

23    Defendant argues that according to these cases, a special relationship sufficient to

24    support a negligence claim between a borrower and loan servicer is limited to a duty to

25    _____

26    [3]Plaintiff's First Amended Complaint alleges a breach of the covenant of good
27    faith and fair dealing based on the contractual relationship between the parties, but in her
     Response to Defendant's Motion, Plaintiff alleges that this is based in tort.  (*See* Doc. 11
28    ¶¶ 67-68, 70, 72; Doc. 41 at 12 (referring to non-contractual duty).)  At oral argument,
     she stated that the claim is in tort.  The Court notes that the proposed Second Amended
     Complaint appears to identify the claim as one in contract. (Doc. 39, Ex. A ¶¶78-79.)

disclose.  *See McIntosh v. IndyMac Bank, FSB*, 2012 WL 176316, *3 (D. Ariz. 2012); *Narramore v. HSBC Bank USA, N.A.*, 2010 WL 2732815, *8 (D. Ariz. 2010) (*citing Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 803 P.2d 900 (Ct.App. Div.1. 1990)).

Plaintiff has not alleged that Defendant disclosed incorrect information to Plaintiff nor has Plaintiff alleged any relationship with Defendant other than traditional borrower and loan servicer. But the district court in *McIntosh* also stated that "it is not apparent to the Court why [the bank] would not have a duty to correctly service [the] [p]laintiff's account" and that if it the bank's failure to correctly service the account resulted in foreclosure, then that states a cause of action in negligence.  2012 WL 176316 at *3. This Court agrees with *McIntosh* that negligent servicing of the account can state a cause of action.

Defendant also replies that the economic-loss doctrine bars any tort claims based out of the contractual relationship between Plaintiff and Defendant that are not accompanied by physical harm.  (Doc. 44 at 3.)

"While some courts have stated that the economic loss doctrine 'bars a party from recovering economic damages in tort unless accompanied by physical harm,'" this definition is overly broad.  *Flagstaff Affordable Housing Ltd. Partnership v. Design Alliance, Inc*., 223 Ariz. 320, 323, 223 P.3d. 664, 667 (Ariz. 2010) (*quoting  Carstens v. City of Phoenix*, 206 Ariz. 123, 125, 75 P.3d 1081, 1083 (Ariz. Ct. App. 2003).  The economic-loss doctrine limits "a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or property." *Design Alliance, Inc*., 223 Ariz. at 323, 223 P.3d. at 667.

As a general rule, where contract law has no mechanism to protect the wronged party, the economic-loss doctrine will not act to bar the claim. *Ares Funding, L.L.C. v. MA Maricopa, L.L.C.*, 602 F.Supp.2d 1144, 1149 (D.Ariz. 2009).  When a duty arises at law, not by contract, the economic-loss rule should not act as a bar to recovery. *Narramore*, 2010 WL 2732815, *6 (*citing Giles v. General Motors Acceptance Corp*., 494 F.3d 865, 880 (9th Cir. 2007)).

1    In sum, in this case, if contract law provides a mechanism to protect Plaintiff as an

2    intended third-party beneficiary to a contract from a wrong based on the contract and

3    Plaintiff has failed to allege any physical injury, Plaintiff's claim for a tortious breach of

4    the covenant of good faith and fair dealing in this case is barred by the economic-loss

5    rule.  *See Ares Funding, LLC v. MA Maricopa, LLC*, 602 F.Supp.2d. 1144, 1148-1149

6    (D. Ariz. 2009).  Alternatively, if there is no contract claim, the Court finds that Plaintiff

7    has stated a claim in tort.

8    The Court will deny the Motion for Judgment on the Pleadings on this claim.

9    **4.      Negligent Performance of an Undertaking**

10   Plaintiff argues that her claim for negligent performance of an undertaking is

11   permitted under Arizona law with respect to a servicer of a loan who offers to participate

12   in assisting a homeowner in a loan modification.  Plaintiff argues that Defendant

13   negligently administered Plaintiff's HHF application and mortgage when it failed to

14   delay the trustee sale after receiving notification that Plaintiff had been approved to

15   receive HHF assistance.

16   Arizona follows the Restatement (Second) of Torts in relation to the tort of

17   negligent performance of an undertaking.  *Steinberger v. McVey ex rel. County of*

18   *Maricopa*, 234 Ariz. 125, 318 P.3d. 419, 430-431 (Ariz. Ct. App. 2014).   The

19   "'Good Samaritan' doctrine allows recovery from those who undertake 'to render

20   services to another which he should recognize as necessary for the protection of the

21   other's person or things' but fail to exercise reasonable care in the performance of the

22   undertaking." *Bergdale v. Countrywide Bank FSB*, 2013 WL 105295, *7 (D. Ariz. 2013).

23   Pursuant to Restatement §323, "a party may assume the duty to act with reasonable care

24   even though it otherwise had no duty to do so."  *Steinberger*, 234 Ariz. 125, 318 P.3d at

25   431.

26   Under this 'Good Samaritan Doctrine,' a party may be liable for negligent

27   performance of an assumed duty by either: (1) increasing the risk of harm to another, or

28   (2) causing another to suffer harm because he or she relied on the party exercising

reasonable care in undertaking the duty." *Steinberger*, 234 Ariz. 125, 318 P.3d. at 431. The Good Samaritan Doctrine is applicable to physical harm and economic harm. *Id.*

The *Steinberger* court held that to state a claim for increased risk of economic harm, the plaintiff must allege the following elements: (1) defendants undertook to render services to the plaintiff that they should have recognized were necessary for the protection of the plaintiff's property, (2) the defendants' failure to exercise reasonable care while doing so increased the risk of harm to the plaintiff, and (3) the plaintiff was in fact harmed because of the defendants' actions. *Id.* at 431 (citing Restatement (Second) of Torts § 323).

Defendant argues in its reply that Plaintiff fails to fully state the standard for such a claim, citing *Steinberger*, where the Arizona Court of Appeals wrote that:

> a lender may be held liable under the Good Samaritan Doctrine when: (1) a lender, or its agent/representative, induces a borrower to default on his or her loan by promising a loan modification if he or she defaults; (2) the borrower, in reliance on the promise to modify the loan, subsequently defaults on the loan; (3) after the borrower defaults, the lender or its agent/representative negligently processes or fails to process the loan modification, or due to the lender/agent/representative's negligence, the borrower is not granted a loan modification; and (4) based on the default, the lender subsequently forecloses on the borrower's property.

*Id.* at 432. Defendant contends that Plaintiff has failed to allege that Defendant induced Plaintiff to default on her loan and as such, her claim for negligent performance of an undertaking fails. However, the court in *Steinberger*, specifically explained that its holding was limited to the particular allegations in that case. *Id.* Defendant has not presented any cases demonstrating that a lender is excepted from the Good Samaritan Doctrine in situations where the lender does not explicitly induce a borrower to default on a loan. *See Silving v. Wells Fargo Bank, NA*, 800 F.Supp.2d 1055, 1073 (D. Ariz. 2011). Moreover, subsequent to the *Steinberger* case, at least one federal district court has said that *Steinberger* holds that the Good Samaritan doctrine permits a homeowner "to sue the bank if through the modification process: '(1) [the bank] undertook to render services to [plaintiff] that [it] should have recognized were necessary for the protection of

- 14 -

[plaintiff's] property, (2) [the bank's] failure to exercise reasonable care while doing so increased the risk of harm to [plaintiff], and (3) [plaintiff] was in fact harmed because of [the bank's] actions.'"  *Quintana v. Bank of America*, 2014 WL 690906, at *6 n.5 (D. Ariz. Feb. 24, 2014), citing *Steinberger*, 2014 WL 333575, *9.

Plaintiff's First Amended Complaint alleges that as a result of Defendant's negligent processing of the HHF application in failing to delay the foreclosure proceeding 45 days in accordance with the Agreement and Plaintiff suffered economic harm in the form of loss of equity and the loss of her family home.  The Court finds that Plaintiff has sufficiently alleged a cognizable claim for negligent performance of an undertaking.

**III.    Motion to Amend the Complaint**

**A.    Governing Standard**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that unless an amendment is as of right pursuant to Rule 15(a)(1), a party may amend its pleading only with the opposing party's consent or the court's permission.  Fed. R. Civ. P. 15.  Leave to amend is to be freely granted.  Fed. R. Civ. P. 15(a)(2).

**B.    Discussion**

The Court will grant the Motion.

On February 14, 2014, the parties filed a Stipulation to Extend the Time to Amend the Pleadings; the Court granted the Stipulation, extending the time to join additional parties or amend the pleadings to March 14, 2014.  (Doc. 31.)  Plaintiff filed her Motion to Amend with the attached proposed Second Amended Complaint on March 14, 2014. (Doc. 39.)

Defendant opposes the motion, arguing that it is made in bad faith and will result in undue prejudice.  (Doc. 41 at 1.)  It asserts that Plaintiff has failed to cure deficiencies by amendments previously allowed.  (*Id*. at 2.)  Defendant also argues that it is a proper exercise of the Court's discretion to deny a motion to amend "when the amendment comes late and raises new issues requiring preparation for factual discovery which would not otherwise have been necessitated nor expected, thus requiring delay in the decision of

1   the case.'" (*Id.*)  Defendant points out that the Court-ordered deadline for discovery is
2   April 30, 2014. (*Id.*; ref. Doc. 34.)  The proposed Second Amended Complaint raises
3   new issues; specifically, Plaintiff seeks to add causes of action for Tortious Interference
4   with Business Expectancy and Fraud. Defendant asserts that these fraud-based causes of
5   action require significant additional discovery. (Doc. 40 at 3.)

6       Plaintiff replies that there was no undue delay in seeking to amend the complaint
7   by adding three new claims, which arise from newly discovered evidence (fraud,
8   negligent misrepresentation, tortious interference with a business expectancy). (Doc. 46
9   at 2.)  She asserts that the basis for these claims was learned through discovery and after
10  the filing of the First Amended Complaint on August 14, 2014.  Specifically, before
11  discovery, Plaintiff believed, based on assertions by Defendant to the Department of
12  Housing, that her home had been sold to a bona fide third-party purchaser on July 6,
13  2012, and so the sale was irreversible.  At the deposition of Defendant's Rule 30(b)(6)
14  witness on February 24, 2014, Plaintiff discovered that the property was, in fact, not sold
15  to a bona fide purchaser, but to Fannie Mae and remained in Defendant's Real Estate
16  Owned Division until October 25, 2012.  Plaintiff asserts that if she had possessed
17  truthful information about the sale, it could have been reversed. (*Id.*)

18      Plaintiff argues that the Court should reject Defendant's objection to adding
19  claims based on Defendant's conduct that was discovered only through a deposition, and
20  she notes that the Motion for Leave to Amend was filed within the timelines stipulated by
21  the parties.  She also argues that the parties have stipulated to extend the discovery
22  schedule. (Doc. 45.)

23      The Court finds that the claims raised in the proposed Second Amended
24  Complaint are not frivolous and that there was no undue delay in raising the new claims.
25  **IT IS ORDERED:**

26      (1)    Defendant's Motion for Judgment on the Pleadings (Doc. 35) is **granted in**
27  **part and denied** in part as follows:

28          (a) **granted** as to the claim for wrongful foreclosure; and

- 16 -

(b) **denied** in all other respects.

(2)     Plaintiff's Motion for Leave to Amend the Complaint (Doc. 39) is **granted**.

(3)     Plaintiff must file the Second Amended Complaint within 14 days of the filing of this Order.

Dated this 3rd day of September, 2014.



Cindy K. Jorgenson
United States District Judge